UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**NOT FOR PUBLICATION**

ALDRICH NINE ASSOCIATES,

    Plaintiff,

v.

FOOT LOCKER SPECIALTY, INC.,

    Defendant

Civ. Action No. 06-3981  (KSH)

**OPINION**

## I. Introduction

This case arises out of a commercial lease dispute between Aldrich Nine Associates ("Aldrich") and Foot Locker Specialty, Inc. ("Foot Locker").  On July 11, 2006, Aldrich filed a complaint against Foot Locker in the Superior Court of New Jersey ("2006 Complaint"), which Foot Locker timely removed to this Court based on diversity of citizenship.  Foot Locker has now brought a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

## II. Background

Triumph Realty Group, Inc. ("Triumph") owned certain real estate in Howell, New Jersey.  On May 2, 1990, Triumph entered into a commercial lease agreement with F.W. Woolworth Co. ("Woolworth") to lease premises on that property.  The original term of the lease expired on January 31, 2001, but Woolworth had the option of extending until 2006.

In 1990, Triumph sold the Howell property to Aldrich and assigned Aldrich its interest in the Woolworth lease.  Later, Woolworth assigned the Woolworth interest to Rx Realty Corp. ("Rx Realty"), a wholly owned subsidiary of Woolworth.  On January 26, 2000, Rx Realty

exercised its option to extend the term of the lease. But on September 24, 2001, Rx Realty's parent company, Phar-Mor, Inc., filed for bankruptcy. Rx Realty vacated the leased premises and stopped paying rent.

The lease agreement provided for two alternative remedies in the case of a default by the tenant: sue for back-rent or seek accelerated damages. The pertinent language reads as follows:

> 21C(1). The landlord may obtain rent due and payable up to the time of re-entry, dispossess, or expiration together with expenses for brokerage and preparing for re-rental under this option the tenant shall pay any deficiency between (a) all rent and additional charges under the lease; and (b) the net amount if any of the rent collected for _each_ month of the period which would otherwise have constituted the balance of the term. The lease further provides that under this option, any such liquidated damages shall be paid in monthly installments on the due date and <u>any suit to collect these amounts does not prejudice the landlord's right to collect any deficiencies for any subsequent month</u>; or
>
> 21C(2) *Alternatively,* the landlord is entitled to recover <u>immediately</u> the difference between (a) the fixed basic rent and additional rent in the lease from the date of default to the expiration date; and (b) the then fair and reasonable rental value for the same period, discounted to the net present value.

(Lease Agreement Ex. A to the Ritter Decl.)(emphases in original).

In 2002, Aldrich filed a complaint in state court against Foot Locker, as the successor in interest to Woolworth,[1] seeking to recover damages for the breach and demanding payment for all amounts due under the lease through January 31, 2006. Aldrich moved for partial summary judgment on the issue of liability. (Aldrich's Mot. for Summ. J., Ex. F. to the Ritter Decl.) Foot Locker opposed the motion, contending an agreement reached between Aldrich and Rx Realty constituted a novation that released it from liability. (Foot Locker's Opp'n to Mot. for Summ. J., Ex. G to the Ritter Decl.) The court granted Aldrich's motion and ordered that "partial summary judgment be and hereby is entered . . . on the issue of Foot Locker's liability for amounts due

---

[1] In 1998, Woolworth changed its name to Venator Group Specialty Inc., which changed its name to Foot Locker Specialty, Inc. in 2001.

under the lease through January 31, 2006." (Order for Partial Summary Judgment, Ex D. Castello Decl.)

A trial on damages was scheduled, prior to which Foot Locker filed a motion *in limine* to preclude Aldrich from offering evidence related to its back-rent claim. Foot Locker argued that Aldrich had elected the accelerated damages provision of the lease prior to trial and so the doctrine of judicial estoppel barred it from attempting to prove a claim based on back rent. (Foot Locker's Mot. *In Limine*, Ex. B to Ritter Decl.) Aldrich responded that it had not elected the accelerated damages provision at any point prior to trial. (Aldrich's Opp'n to Mot. *In Limine*, Ex. C to the Ritter Decl.)

The state court ruled in favor of Aldrich, and added that Aldrich would be permitted to bring a second lawsuit against Foot Locker for the remainder of the rent under the terms of the lease. (Ex. D to Ritter Decl. 43-45.) The trial judge, who did not decide the summary judgment motion on liability, reasoned as follows:

> We do find, in addition thereto, that there are two options for being relieved or being addressed in damages at this point: 21C1 [of the lease agreement], which is the right of entry in terms of context which talks about – which spells out for back rent at the time or which is less than global or for the rents projected. One, the latter; two, 21C:2 does require an expert. There is no expert here and there is no judicial estoppel because those are the two options you had.
> 
> Although the entire controversy rationale does - - would indicate that we should resolve this all in one fell swoop, unfortunately with these leases in the context commercial as they were, they can be addressed seriatim at this point in time and that's where we are. And that is why I was very much interested in speaking initially off the record before trying to resolve this matter rather than having two trials at this point, which is frowned upon, but given the terms of the lease there is no judicial estoppel. Judge Mecca did not rule on anything other than liability attaching for the full period of time.

(Id. 43-44.)

Judgment was entered in favor of Aldrich in the amount of $1,150,632.75, which represented the amount of back rent due under the lease through the date of the trial.

3

Foot Locker lost its appeal of the final judgment and the order granting partial summary judgment, and the New Jersey Supreme Court denied certification. Thereafter Foot Locker paid Aldrich the full amount of the judgment.

On July 11, 2006, Aldrich commenced the current action to recover rent from the date of the trial through the end of the lease term. (Ex. K. to Ritter Decl.) This time Foot Locker removed the lawsuit to federal court.

### III. Standard

Pursuant to Federal Rule of Civil Procedure 12 (b)(6) a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Under this rule a motion to dismiss "may only be granted if, accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." Maio v. Aetna, Inc., 221 F.3d 472, 481-481 (3d Cir. 2000).

### IV. Discussion

Foot Locker argues that *res judicata* and the entire controversy doctrine bar the claims Aldrich asserts. Aldrich responds that the trial judge in the 2002 state court action already ruled that its claims could be brought in this follow-up lawsuit when it permitted Aldrich to assert its back rent claim and rejected Foot Locker's contention that Aldrich had to elect the accelerated damages remedy. In analyzing the effect of the prior state litigation, which both parties rely on in making their arguments here, this Court applies New Jersey claim preclusion law, because a federal court must give a state court judgment "the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." Walker v. Horn, 385

4

F.3d 321, 337 (3d Cir. 2004)(quoting Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984).  The Court will begin by addressing the Aldrich's argument that collateral estoppel prevents Foot Locker from arguing an issue that was already decided in the state court action.

### A.  Collateral Estoppel

The doctrine of collateral estoppel, "bars relitigation of any issue which was actually determined in a prior action, generally between the same parties, involving a different claim or cause of action." Ziegelheim v. Apollo, 128 N.J. 250, 265 (1992)(quoting State v. Gonzalez,75 N.J. 181, 186 (1977).  Collateral estoppel precludes relitigation of an issue when the following factors are met:

> (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.

Hennessey v. Winslow Tp., 183 N.J. 593, 599 (2005)(quoting Matter of Estate of Dawson, 136 N.J. 1, 20-21 (1994)(citations omitted).

 "To invoke preclusion, it is required that the subsequent action must involve substantially similar or identical causes of action, issues, parties and relief as were involved in the prior action." Pittman v. La Fontaine,756 F.Supp. 834, 841 (D.N.J., 1991)(citing Culver v. Ins. Co. of N. Am., 115 N.J. 451, 460, 559 A.2d 400 (1989)).  In comparing the state and federal lawsuits before this Court, it appears that the parties and the cause of action are the same, but the issue is not.  Foot Locker's motion *in limine* in the state court raised the issue of whether Aldrich was barred by the doctrine of judicial estoppel from presenting evidence on its back-rent claim, based on the pretrial motion Aldrich had made on the issue of liability.  Foot Locker's issue in

5

federal court is whether *res judicata* and the entire controversy doctrine bars Aldrich from bringing a second lawsuit based on the same controversy. These issues are not identical.

As well, although the state court indicated that Aldrich would not be barred from bringing a second lawsuit, the doctrine of collateral estoppel can only be applied when a ruling is either "essential" or "necessary to support the [] judgment." Mansoldo v. State, 187 N.J. 50, 60 (2006). It is a stretch to construe the trial court's statement that Aldrich would not be barred from bringing a second lawsuit as "essential" to its ruling on the *in limine* motion or necessary to support the court's judgment.[2] Accordingly, the doctrine of collateral estoppel does not apply.

### B. The Entire Controversy Doctrine

Foot Locker's motion rests on the argument that the entire controversy doctrine bars Aldrich's complaint because the "sole claim asserted in the 2006 complaint mirrors the claim that was already adjudicated in the 2002 state court action." (Foot Locker's Br. 15.) Aldrich responds that the claims in this action had not accrued when the state court action was decided. (Aldrich's Opp'n Br. 26.)

The entire controversy doctrine requires parties to assert in one action "all related claims against a particular adversary or be precluded from bringing a second action based on the omitted claims against that party." Melikian v. Corradetti, 791 F.2d 274, 279 (3d Cir. 1986). The test for whether successive claims constitute one controversy is whether the claims "arise from related facts or the same transaction or series of transactions." DiTrolio v. Antiles, 142 N.J.

---

[2] In reviewing what the trial judge did say before commencing the hearing on damages, it appears that the ruling arose out of the absence of an expert who could have opined on Aldrich's damages. The court's statements suggest that the judge discerned some interrelationship between and among the issues of entire controversy, commercial lease agreement remedies, and the effect of the earlier summary judgment ruling by a different judge. But this discussion does not add up to something as weighty as collateral estoppel for purposes of the issues before this Court.

253, 267 (1995).

In Fanarjian v. Moskowitz, a dentist who was renting a suite in a commercial building informed his landlords that he would be vacating the premises, and after a few months he stopped paying his rent. 237 N.J. Super. 395 (App. Div., 1989). The landlords then brought successive lawsuits against the dentist for each month that he failed to pay his rent. One of these cases was appealed from the Special Civil Part and the Appellate Division affirmed on grounds that are not relevant to this action. What is significant is what the court said in a footnote.

> It may be questioned whether plaintiffs, after a known breach of the *entire* lease, in effect an anticipatory breach as to each remaining month of the lease, should be permitted to file separate complaints for each month without violating the entire controversy rule and the mandatory joinder provisions of *R.* 4:27-1(b).

Id. at 399, n.1.

The Fanarjian court questioned precisely what Aldrich is doing here. When Aldrich sued Foot Locker in 2002, Aldrich successfully obtained the state court ruling that Foot Locker was liable for the full term of the lease. Then Aldrich split its claims by seeking damages for a portion of the lease term rather than the full lease term.

Not surprisingly, the state court mentioned the entire controversy doctrine when it addressed Aldrich's election of the back rent remedy. Apparently, the issue was not the focus of the parties' attention, despite the strong legal authority in New Jersey that would thrust the entire controversy doctrine into the forefront. "Under the entire controversy doctrine, a party cannot withhold part of a controversy for separate later litigation even when the withheld component is a separate and independently cognizable cause of action." Paramount Aviation Corp. v. Agusta, 178 F.3d 132, 137 (3d Cir. 1999); see also Melikian, 791 F.2d at 279(calling the entire controversy doctrine "a broad policy against claim-splitting").

7

It appears that in pretrial motion practice in the state lawsuit, Foot Locker fought hard to escape liability for the full term of the lease, and Aldrich was successful in defeating Foot Locker's argument.  The motions judge ruled that Foot Locker was liable "for amounts due under the lease through January 31, 2006."  The entire controversy doctrine "requires that a party who has elected to hold back from the first proceeding a related component of the controversy be barred from thereafter raising it in a subsequent proceeding."  Blanchard Co. v. Beach Concrete Co., 150 N.J. Super. 277, 293 (App. Div. 1977).  Notwithstanding, Aldrich chose to seek back rent from Aldrich, despite the ruling that it was liable on the full term of the lease, holding back a related component of the underlying controversy in the first action -- its damages from August 1, 2003 through January 31, 2006. As a consequence, Aldrich's position that its claims had not accrued is not persuasive, and Foot Locker correctly asserts that the entire controversy doctrine bars Aldrich's claims in this lawsuit. [3]

### V. Conclusion

For the foregoing reasons, the defendant's motion to dismiss is granted.  An appropriate order will be entered.

/s/Katharine S. Hayden
KATHARINE S. HAYDEN
United States District Judge

---

[3] It is unnecessary to decide whether Aldrich's claim is also barred by the doctrine of *res judicata* because the two doctrines are closely related Rycoline Products, Inc. v. C & W Unlimited,109 F.3d 883, 886 (3d Cir. 1997) and the entire controversy doctrine reaches more broadly than traditional *res judicata* doctrine. Electro-Miniatures Corp. v. Wendon Co., Inc.  889 F.2d 41, 44 (3d Cir. 1989).